**In re Kosta SASSALOS, Debtor.**

**JOHN S. MARANDAS, P.C., Objecting Putative Creditor and Appellant,**

v.

**Alexander T. BISHOP, Esq., Trustee, Kosta Sassalos, Stan Tsoumas, Arma Tsoumas, Spiro Sassalos and Eugenia Terzis–Sassalos, Contracting Parties.**

**Stan TSOUMAS and Arma Tsoumas, Plaintiffs,**

v.

**Kosta SASSALOS, Defendant.**

Civ. No. 93–1024–FR.
Bankruptcy No. 391–34382–S07.
Adv. No. 92–3095.

United States District Court,
D. Oregon.

Oct. 28, 1993.

John S. Marandas, John S. Marandas, P.C., Portland, OR, for appellant.

Daniel F. Vidas, Dunn, Carney, Allen, Higgins & Tongue, Portland, OR, for appellee Alexander T. Bishop, Trustee.

## OPINION

FRYE, District Judge:

The matter before the court is the appeal of John S. Marandas, P.C., objecting putative

creditor, from a decision of the United States Bankruptcy Court for the District of Oregon.

## BACKGROUND

Debtor, Kostas Sassalos, filed a voluntary petition in bankruptcy under Chapter 7, Case No. 391–34382–S07, on July 3, 1991. In the bankruptcy schedules and the petition that he filed, Sassalos listed only the following creditors: a travel agency to which he owed approximately $840, and Stan and Arma Tsoumas who had a judgment against him in the sum of $350,000 plus interest in the Circuit Court of the State of Oregon for the County of Multnomah. The judgment that the Tsoumases had obtained against Sassalos arose from the default of Sassalos as the purchaser of a restaurant known as The Gourmet Broiler. Prior to filing his petition in bankruptcy, Sassalos returned The Gourmet Broiler to the Tsoumases, the contract creditors, who continued to operate it.

On June 4, 1992, the bankruptcy court granted relief to the Tsoumases from the automatic protective stay of the bankruptcy court so that the Tsoumases could execute their judgment against Sassalos, and so that the restaurant could be sold at a Sheriff's Sale pursuant to the judgment entered by the Circuit Court of the State of Oregon for the County of Multnomah.

On March 12, 1992, Stan and Arma Tsoumas, as plaintiffs, filed Adversary Proceeding No. 92–3095, seeking to prevent Sassalos from obtaining a discharge in bankruptcy pursuant to Section 727 of the Bankruptcy Code. They alleged that Sassalos concealed certain property and assets, fraudulently transferred property and assets to his children, filed false schedules, made false statements in his statement of affairs, and failed to keep adequate financial records.

The discovery efforts of the Tsoumases in Adversary Proceeding No. 92–3095 were difficult and lengthy. The Tsoumases discovered evidence suggesting concealed and/or transferred assets; however, it appeared to them that these assets were either located in the country of Greece, the homeland of Sassalos, or had been transferred to his children, except for one asset which had been transferred to John S. Marandas, the objecting creditor and the appellant herein, after Sassalos had filed his petition in bankruptcy.[1] Even with a favorable verdict against Sassalos, the Tsoumases would have faced difficulties in executing a judgment against foreign property and in pursuing actions for fraudulent conveyance against the children of Sassalos.

On or about July 17, 1992, the parties engaged in a settlement conference before the Honorable Elizabeth L. Perris, United States Bankruptcy Judge. The trustee in bankruptcy, Alexander T. Bishop, participated in the settlement conference, as did the children of Sassalos. For purposes of the settlement conference, the children and the wife of Sassalos were treated as a single party.

The parties reached a settlement, which was reduced to writing. The settlement provided, in part, for the dismissal by the Tsoumases of the adversary proceeding and for the release of all of their claims against Sassalos and his family. In return, Sassalos and his family agreed to pay $12,000 to the trustee in bankruptcy for the benefit of the bankruptcy estate, and agreed that the trustee would waive any claim he had against the Tsoumases under Section 542 of the Bankruptcy Code for rents and profits generated by the operation of the restaurant after the filing of the petition in bankruptcy.

Finally, Sassalos and his family agreed to cooperate with the trustee and his special counsel in their efforts to recover on claims against John Marandas for post-petition payments, including testifying and providing documentary evidence. The parties agreed that the trustee would hire as special counsel Tilman Hasche, the attorney for the Tsoumases, for the purpose of pursing a claim against the creditor, John Marandas.

John Marandas objected to the settlement on the grounds that 1) there had been no accounting by the Tsoumases for any of the

---

1. John Marandas had represented Sassalos with respect to legal and business matters unrelated to this bankruptcy.

profits from the operation of the restaurant; 2) the judgment in favor of the Tsoumases was based on false statements and/or non-disclosures; and 3) Marandas had no liability for claims based on post-petition transfers and would be entitled to sanctions against the trustee and the bankruptcy estate if a "formal claim" was filed. Marandas also filed a "motion for summary judgment" and documents in support of his objections to the settlement agreement. Marandas sought a ruling of the bankruptcy court that he had no liability; objected to the employment of Tilman Hasche as special counsel to the trustee on the grounds of conflict of interest because Hasche had represented the Tsoumases; and sought an extension of time to commence his own adversary proceeding against Sassalos.

A hearing on the motion for approval of settlement and on the objections of Marandas to the settlement was set for January 13, 1993 before the Honorable Polly S. Higdon, United States Bankruptcy Judge. Prior to January 13, 1993, discovery had "gotten out of hand" (Transcript of February 26, 1993, p. 92); a number of pleadings were filed; and Marandas and Hasche filed claims and cross-claims for sanctions and also filed ethical complaints against each other with the Oregon State Bar Association.

On January 13, 1993, Marandas and the trustee appeared personally without legal counsel; Hasche appeared on behalf of the Tsoumases; and Paul Cosgrove appeared on behalf of the children of Sassalos. As a result of that hearing, Judge Higdon revoked the order appointing Hasche as special counsel for the trustee and instructed the trustee to hire independent counsel to represent him regarding the settlement agreement. The hearing was adjourned to February 26, 1993.

On January 15, 1993, Judge Higdon denied the motions of Marandas and Hasche to compel production and limited discovery to the issue of whether the trustee had sufficient information before him at the time of the settlement conference to have included the paragraph concerning the potential claim against Marandas to recover an alleged post-petition transfer. Judge Higdon denied the motion of Marandas for an extension of time within which to file his own adversary pro-ceeding and denied the motion of Marandas for a ruling on summary judgment that he had no liability for alleged post-petition transfers received from Sassalos.

At the hearing on February 26, 1993, Marandas appeared personally and without legal counsel; the trustee appeared personally and by and through his attorney, Daniel Vidas; and the Tsoumases appeared by and through their attorneys, Tilman Hasche and Richard Parker. The children of Sassalos did not appear.

The attorney for the trustee advised the court that the settlement was reasonable based on the facts and the documents in evidence as of July 17, 1992. Judge Higdon approved the settlement. In addition, although she declined to find that Hasche had a conflict of interest, Judge Higdon instructed the trustee to continue to be represented by independent counsel in regard to the pursuit of any claims against Marandas.

## CONTENTIONS OF THE PARTIES

Marandas contends that the court erred as to the following matters: 1) in closing discovery at the hearing on January 13, 1993 and in denying the motions of Marandas to continue discovery; 2) in denying Marandas' motion for summary judgment; 3) in not removing Tilman Hasche as special counsel for the bankruptcy estate prior to the hearing on February 26, 1993; 4) in denying the motion of Marandas to extend the time for filing an adversary proceeding; and 5) in approving the settlement agreement.

The trustee argues that the court did not err as to any of these matters, and that Marandas' claims should be dismissed under the doctrine of equitable mootness.

## STANDARD OF REVIEW

■ This court acts as an appellate court over decisions of the bankruptcy court reviewing findings of fact under the clearly erroneous standard and reviewing conclusions of law *de novo*. *In re Holm,* 931 F.2d 620, 622 (9th Cir.1991); *In re Daniels–Head & Assocs.,* 819 F.2d 914, 918 (9th Cir.1987).

## ANALYSIS

### 1. *The Doctrine of Equitable Mootness*

On July 22, 1993, this court denied as moot the motion of Marandas to dismiss without prejudice. Minute Entry dated July 22, 1993. In denying the motion without prejudice, it was the intent of the court that Marandas was not precluded from claiming that any individual assignment of error is moot. The trustee argues that Marandas' appeal to this court should be dismissed because Marandas has failed to request or otherwise seek a stay pending appeal. The trustee does not specify which individual claims of error were rendered moot by the doctrine of equitable mootness. Because the trustee renews the same argument made in the motion to dismiss, without claiming that any individual assignments of error are moot, the arguments of the trustee amount to a request that the court reconsider the denial of its motion to dismiss. No motion for reconsideration has been filed; therefore, the court will not address an issue previously ruled upon.

### 2. *Judge Higdon's Discovery Rulings*

The purpose of the hearings held on January 13, 1993 and on February 26, 1993 was for the court to consider the adequacy of the settlement agreement and to consider the objections of Marandas to the settlement agreement. Judge Higdon indicated that she had thoroughly reviewed the file, including the motions and accompanying evidence submitted by the parties. Transcript of January 13, 1993, pp. 2–3. Judge Higdon also listened to extensive argument regarding the various motions filed by Marandas. *Id.* at 27–49. In an order dated January 15, 1993, Judge Higdon ruled that:

> (2) All motions to compel production are denied.
>
> . . . .
>
> (8) The trustee, Mr. Hasche on behalf of his client, Mr. Tsoumas, and Mr. Marandas shall immediately cease all further discovery related in any way to all matters until further order of the court.

Order, January 15, 1993, Bankruptcy Case No. 391–34382–S7, pp. 1–2.

In addition, Judge Higdon vacated the status of Hasche as special counsel and required the trustee to obtain independent counsel. Judge Higdon instructed the attorney for the trustee to proceed:

> in any way he chooses to gather the information that he knows this court will want to hear in support of that settlement agreement. He may choose to do nothing. . . . He may think that with the testimony of the trustee, the testimony of the other parties that were present at the time of the settlement agreement and laying out to the court what all of the problems and ramifications were that the trustee was looking [for] at the time but it was an appropriate settlement agreement and he didn't need to go any further.

Transcript of January 13, 1993, pp. 56–57. Judge Higdon narrowed the issue for the hearing on February 26, 1993 to whether the settlement agreement should be approved, including paragraph 12, which provided that the parties assist the trustee in pursuing an action against Marandas. The court indicated that the testimony regarding the alleged post-petition transfer to Marandas, which had been submitted to the court, was sufficient for the court to determine whether settlement should contain paragraph 12 of the settlement agreement. Transcript of January 13, 1993, p. 57. Judge Higdon stated:

> I don't want to go into the merits of the action against Mr. Marandas, uh, at the time of the settlement agreement hearing. All I want to know is if there was a legitimate reason . . . to assume that there was a good cause of action out there and put that in as part of the settlement agreement.

*Id.*

Following the court's indication on February 26, 1993 that it would approve the settlement agreement, Marandas moved the court for a continuance and for the opportunity to conduct further investigation and thereafter to submit further evidence to the court. This motion was denied. Judge Higdon stated: "I'm going to rule against you . . . I do not

believe that any of that is relevant." Transcript of February 26, 1993, p. 93.

It is within the discretion of a judge to limit discovery as appropriate under Fed. R.Civ.P. 26(b)(1). Judge Higdon reviewed the evidence which had been provided by Marandas in support of his motions and had listened to extensive oral argument. Judge Higdon considered the issues raised by Marandas, acted on one of these issues by appointing independent counsel, and determined that the other objections of Marandas had limited relevance as to the question of whether the terms of the settlement agreement should be approved. It was not an abuse of discretion for Judge Higdon to deny the motions to compel and to order Marandas to cease any further discovery efforts. Likewise, it was not an abuse of discretion for Judge Higdon to deny Marandas' motion for a continuance in order to pursue further discovery which Judge Higdon determined was irrelevant.

### 3. *The Motion of Marandas for Summary Judgment*

Prior to the hearing on January 13, 1993 of the motion for approval of the settlement and Marandas' objections to the settlement, the trustee's special counsel, Tilman Hasche, had made a written demand on Marandas for the alleged post-petition payments he had received. In the contested matter regarding the approval of the settlement, Marandas had filed a "motion for summary judgment" seeking a ruling that he had no liability for the alleged transfers of the post-petition payments he had received. Marandas argues that the bankruptcy court was clearly erroneous in denying his "motion for summary judgment" because there were no objections or countervailing affidavits presented in opposition to the motion.

At the hearing on January 13, 1993, Judge Higdon stated: "[W]hat you are in essence asking me to do with this motion for summary judgment is to decide the merits of a potential controversy between yourself and the trustee that hadn't even been filed yet and I'm not gonna [sic] do that.... This has nothing to do with the settlement agreement." Transcript of January 13, 1993, pp. 59–60.

Fed.R.Civ.P. 56 envisions summary proceedings following the commencement of an action. At the hearing on January 13, 1993, there had been no "commencement of an action" against Marandas; therefore, Judge Higdon correctly denied his motion for summary judgment.

### 4. *Removal of Special Counsel Tilman Hasche*

Pursuant to the order of the court dated September 21, 1992, Tilman Hasche was appointed as special counsel for the trustee in bankruptcy for the purpose of bringing an avoidance and recovery action against Marandas. To the extent that Marandas asserts that Hasche's authority as special counsel emanates from the settlement agreement, Marandas is mistaken. Hasche was appointed special counsel by a bankruptcy judge, and his authority as special counsel arose from that appointment under 11 U.S.C. § 327. 11 U.S.C. § 327 does not impose upon Hasche a duty to disclose any other proposed agreement in connection with that employment.

Marandas also argues that Hasche's appointment is invalid because Hasche has a conflict of interest. 11 U.S.C. § 327(c) requires:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section soley because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

The appointment of Hasche as special counsel for the trustee in bankruptcy does not violate 11 U.S.C. § 327(c) because the interests of the Tsoumases and the interests of the trustee were identical at the time of his appointment. Therefore, the appointment of Hasche was a valid appointment, and Judge Higdon did not err in failing to remove Hasche as special counsel retroactive to the date of his appointment.

Marandas contends that Hasche should have been removed at the moment a conflict of interest arose from his representation of the primary creditors, the Tsoumases. Marandas argues that the court erred in failing to make the effective date of the removal retroactive to the date on which notice was given of Marandas' objection to the settlement.

As to the issue of a conflict of interest, Judge Higdon found that:

> [A]t the time the settlement was entered into and Mr. Hasche's name appeared in the settlement document to pursue the preference action, I could not see that there was any conflict there. It was only when an objection to the compromise and settlement was filed that then there became at least the appearance of a conflict on his part because his client was also a part of the settlement agreement.

Transcript of February 26, 1993, pp. 97–98. The question of whether Hasche had a conflict of interest did not arise until after Marandas objected to the settlement. At the hearing on February 26, 1993, Judge Higdon stated that Hasche's representation created only "the appearance of a conflict," but not an actual conflict after Marandas filed his objection. The Disciplinary Counsel for the Oregon State Bar Association also declined to find that Hasche had a conflict of interest in his limited role as special counsel. Appellant's Excerpt of Record, p. 262. Although Judge Higdon did not find a conflict of interest at the hearing on January 13, 1993, she removed Hasche as special counsel at the urging of Marandas and required that the trustee be represented by independent counsel until the settlement issue was resolved. The bankruptcy court did not err in failing to remove Hasche as special counsel prior to the hearing on January 13, 1993.

5. *Denial of Marandas' Motion to Extend Time to File Adversary Proceeding*

In its order dated January 15, 1993, the bankruptcy court denied the motion of Marandas to extend the time to file an adversary proceeding. Marandas contends that the bankruptcy court erred in denying his motion to extend time under the doctrine of excusable neglect. In support of his contention, Marandas cites *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), and Bankruptcy Rule 9006(b)(1). The trustee claims that *Pioneer Inv.* applies only to Chapter 11 reorganizations, not Chapter 7 filings, and that Bankruptcy Rules 9006(b)(2) and (3) apply in addition to Bankruptcy Rule 9006(b)(1).

Bankruptcy Rule 9006(b) provides, in relevant part:

> **(1) In General.** Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice thereunder or by order of court, the court for cause shown may at any time in its discretion (1) ... order the period enlarged ... or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
>
> **(2) Enlargement Not Permitted.** The court may not enlarge the time for taking action under Rules 1007(d), 1017(b)(3), 2003(a) and (d), 7052, 9023, and 9024.
>
> **(3) Enlargement Limited.** The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules.

At the hearing on January 13, 1993, Judge Higdon stated as follows when she denied Marandas' motion to extend the time to file an adversary proceeding:

> Bankruptcy Rule 9006(c) makes it very clear that in order for you to have, in order for a creditor to have the time to file, additional time to file a, to file such a complaint, either under [Section] 523 or [Section] 727, you must file the motion to extend time within the original timeframe [sic] given to file the original action.

Transcript of January 13, 1993, p. 59. The rules for filing claims under Section 523 and Section 727 of the Bankruptcy Code are Bankruptcy Rules 4004(a) and 4007(c), respectively. Both of these rules require that a motion to extend the time for filing an

amended complaint must be made before the time for filing the complaint has expired. Marandas did not file a motion to extend the time for filing an amended complaint before the time for filing the complaint had expired. The bankruptcy court did not err in applying the plain language of Bankruptcy Rules 9006(c), 4004(a), and 4007(c).

Marandas argues, nonetheless, that his motion should be allowed because his failure to timely file was excusable neglect under the rule of *Pioneer Inv.* While *Pioneer Inv.* establishes a test for determining excusable neglect, that case concerns excusable neglect under Bankruptcy Rule 3003(c) in a proceeding under Chapter 11. Marandas points to nothing in *Pioneer Inv.* which would indicate that the test articulated there for excusable neglect was intended to apply outside the context of a proceeding under Chapter 11. In fact, the rules regarding how the time limits for filing are determined are markedly different in proceedings under Chapter 11. Under Bankruptcy Rule 3003(c), the time for filing a proof of claim in a proceeding under Chapter 11 is fixed by the court. As is a Chapter 7 case, this case is governed by Bankruptcy Rule 3002(c), which fixes the filing limitation at 90 days from the meeting of the creditors. Therefore, the rule of *Pioneer Inv.* does not apply to this case.

6. *Approval of the Settlement Agreement*

Marandas contends that the settlement agreement approved by Judge Higdon is inequitable because the court did not provide facts sufficient to support the approval of the settlement. The trustee argues that Judge Higdon made specific findings on every factor required, and that the settlement achieved an equitable result.

■ The standards for approval of a proposed settlement have been enunciated in the Ninth Circuit, and in order to determine whether a proposed settlement is fair and equitable, the bankruptcy court must consider four factors:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re Woodson,* 839 F.2d 610, 620 (9th Cir. 1988) (quoting *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir.1986) (citation omitted)).

■ Pursuant to Bankruptcy Rule 9019(a), compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in the sound discretion of the bankruptcy judge. Such a decision is reviewable, but will normally not be set aside except where there is an abuse of discretion. 9 *Collier on Bankruptcy* ¶ 9019.03 (15th ed.).

The four factors set out in *Woodson* are recited in the final order of Judge Higdon approving the settlement. The transcript from the hearing on February 26, 1993 indicates that Judge Higdon took testimony from the trustee, Hasche, and the attorney for the trustee concerning how the four factors should be applied in this case. Hasche testified that to prevail in the fraudulent conveyance action would have been costly, and even if the action had been successful, the money held by the children would be very difficult to obtain. Transcript of February 26, 1993, p. 25. The trustee testified that he expected that an action for fraudulent conveyance would have been extended and expensive and "fought at every stage of the game." *Id.* at 58. Not only would it have been a "very difficult task to get anything from anybody," the trustee testified that he had no money and no means of funding litigation. *Id.* at 59. Moreover, only one proof of claim had been filed in the case, and even if the trustee was successful in collections, the overwhelming majority of any recovery would have been paid to the Tsoumases.

At the hearing on February 26, 1993, Marandas argued that Judge Higdon should not approve the settlement because the state court judgment on which the Tsoumases based their claim was invalid as a result of misstatements or non-disclosures; that the only document which was submitted by the

Tsoumases in support of this claim was an unauthenticated Oregon Liquor Control Commission application which stated a higher value for the restaurant than the value listed in the bankruptcy court; and that the trustee was required to make an accounting of profits earned after the Tsoumases took over the restaurant.

At the hearing on February 26, 1993, the trustee argued that he had made an assessment of the profit and loss statements and determined that, although the trustee had a technical claim against the Tsoumases for lost profits, the value of any such claim was insignificant, especially in light of the fact that most of the recovery would have been re-paid to the Tsoumases.

Judge Higdon considered the objections of Marandas and the documents submitted by Marandas on the issues of the invalidity of the judgment and the accounting of profits and concluded that these issues had only limited relevance. At the conclusion of the hearing on February 26, 1993, Judge Higdon addressed the concerns of Marandas directly:

[F]irst of all, I'm going to allow your documents in. I will allow you to make an offer of proof on your documents, even though they're not authenticated. If you want to appeal this, I'll let the Appeals Court deal with that.

However, for my purposes today, I do not believe that any of that is relevant. I have not looked at the documents, but you have, in essence, told me the nature of them, and based on what you have told me, I don't think any of that is relevant to the issues that I have to decide today. And that is because they do not address the probability of success in the litigation. They do not address the difficulties to be encountered in the manner of collection. They do not address the complexity of the litigation involved and the expanse [sic] and convenience and delay necessarily attending it.

They may address, to a certain extent, the paramount interest of the creditors. However, this is a unique case, and I've already indicated in what way it is unique. The primary and perhaps sole creditor in this estate other than the $800 claim for something are the Tsoumases who entered into the settlement agreement, and their views as to the appropriateness of this settlement I need to give—I'm required to give deference to.

Therefore, I have to rule on behalf of the trustee on the issue that is before me today for the treasons [sic] that I've stated.

Transcript of February 26, 1993, pp. 93–94.

 This court finds that Judge Higdon had good reason to approve the settlement based on the first three factors from *Woodson*. All of the parties, except for Marandas, advocated approval of the settlement at the hearing on February 26, 1993. Judge Higdon considered Marandas' remarks but found the relevance of the issues he raised limited to the final factor of the test outlined in *Woodson*. The fact that Judge Higdon gave deference to the views of the primary creditor does not nullify the fact that she carefully considered the objections made by Marandas. The test as articulated in *Woodson* does not require that the views of all potential creditors be given equal weight; it simply requires that their views be given "proper deference" by the judge approving the settlement. Judge Higdon's decision was more than a mere boilerplate approval of the trustee's suggestions. The bankruptcy court made a reasoned decision based on the factors outlined in *Woodson*. Judge Higdon did not err when she approved the settlement.

## CONCLUSION

The decision of the bankruptcy court is affirmed.